## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

SONITHA SCALES, ALICIA THOMAS, STEPHEN MCNUTT, JEFF PORTER, & PAUL SIMONE, individually, and on behalf of all other similarly situated individuals,

        Plaintiffs,

        v.

JAY MCGRAW; ERIC WELCH; CREDITSERVE, INC.; MINTO FINANCIAL, d/b/a MINTO MONEY; and JOHN DOES 1-10,

        Defendants.

Case No. 1:24-cv-11575

Judge: Hon. Manish S. Shah

## MEMORANDUM OF LAW IN SUPPORT OF CREDITSERVE DEFENDANTS' MOTION TO COMPEL ARBITRATION AND STAY THE ACTION

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    RELEVANT FACTS ......................................................................................... 2

III.   ARGUMENT ...................................................................................................... 3

      A.      Each Plaintiff Must be Compelled to Arbitrate Their Claims .............................. 4

            1.       The Parties Formed a Valid Agreement to Arbitrate ................................. 4

            2.       The Arbitration Provision Delegates Arbitrability Issues to the Arbitrator ................................................................................................ 5

            3.       Plaintiffs' Claims Fall Squarely Within the Arbitration Provision's Scope ................................................................................................ 7

            4.       All Defendants Are Entitled to Enforce the Arbitration Clause ................ 9

      B.      The Prospective Waiver Doctrine Is Not a Bar to Compelling Arbitration Here ................................................................................................................ 10

            1.       The Loan Agreements Preserve Plaintiffs' Federal Statutory Rights ...... 10

            2.       The Court Could Still Enforce the Arbitration Provisions Even if They Required Applying Tribal Law over Federal Law .......................... 13

      C.      Plaintiffs Must Be Compelled to Arbitrate Individually, Not as a Class ............. 14

      D.      The Court Should Stay this Action Pending Completion of Plaintiffs' Arbitrations, or, Alternatively, Pending Appellate Guidance from the Seventh Circuit ................................................................................................ 15

IV.   CONCLUSION ................................................................................................... 15

**CASES**

*Achey v. BMO Harris Bank, N.A.*,
64 F. Supp. 3d 1170 (N.D. Ill. 2014) ................................................................5, 10

*Agha v. SoFi Lending Corp.*,
2024 WL 1158406 (N.D. Ill. Mar. 18, 2024) .............................................................14

*Am. Exp. Co. v. Italian Colors Rest.*,
570 U.S. 228 (2013) ...........................................................................................10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
475 U.S. 643 (1986) .........................................................................................1, 8

*Buckeye Check Cashing, Inc. v. Cardegna*,
546 U.S. 440 (2005) .........................................................................................4, 13

*C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*,
532 U.S. 411 (2001) .............................................................................................9

*Doctor's Assocs., LLC v. Tripathi*,
794 F. App'x 91 (2d Cir. 2019) .............................................................................11

*Domer v. Menard, Inc.*,
116 F.4th 686 (7th Cir. 2024) ..................................................................................4

*Dunn v. Glob. Tr. Mgmt., LLC*,
2024 WL 4379966 (11th Cir. Oct. 3, 2024) ...............................................................11

*Ferguson v. Corinthian Colls., Inc.*,
733 F.3d 928 (9th Cir. 2013) .................................................................................11

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012) .................................................................................8

*Green Tree Fin. Corp.-Ala. v. Randolph*,
531 U.S. 79 (2000) ................................................................................................1

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
552 U.S. 576 (2008) ..............................................................................................4

*Harris v. W6LS, Inc.*,
2024 WL 2319716 (N.D. Ill. May 22, 2024) ..............................................................15

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
586 U.S. 63 (2019) ...............................................................................................6

*Herrington v. Waterstone Mortg. Corp.*,
907 F.3d 502 (7th Cir. 2018) .................................................................................14

*HSBC Bank USA, Nat'l Ass'n v. Williams*,
2015 WL 1509779 (N.D. Ill. Mar. 30, 2015) ..............................................................9

*Hughes Masonry Co. v. Greater Clark Cty. Sch. Bldg. Corp.*,
659 F.2d 836 (7th Cir. 1981) ............................................................5

*K.F.C. v. Snap, Inc.*,
29 F.4th 835 (7th Cir. 2022) ............................................................6

*Kemph v. Reddam*,
2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) ..................................7

*KPMG LLP v. Cocchi*,
565 U.S. 18 (2011) ...........................................................................4

*Lamps Plus, Inc. v. Varela*,
587 U.S. 176 (2019) .......................................................................14

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) .......................................................................15

*Lee v. Uber Techs., Inc.*,
208 F. Supp. 3d 886 (N.D. Ill. 2016) ..............................................7

*Livingston v. Assocs. Fin., Inc.*,
339 F.3d 553 (7th Cir. 2003) ........................................................14

*McClenon v. Postmates, Inc.*,
473 F. Supp. 3d 803 (N.D. Ill. 2020) ..............................................7

*Miracle-Pond v. Shutterfly, Inc.*,
2020 WL 2513099 (N.D. Ill. May 15, 2020) ...................................5

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
473 U.S. 614 (1985) ..............................................................8, 11, 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) ..........................................................................8, 9

*Nicosia v. Amazon.com, Inc.*,
384 F. Supp. 3d 254 (E.D.N.Y. 2019) .............................................5

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
713 F. Supp. 2d 734 (N.D. Ill. 2010) ............................................10

*Rent-a-Ctr. W., Inc. v. Jackson*,
561 U.S. 63 (2010) .......................................................................6, 13

*Rock Hemp Corp. v. Dunn*,
51 F.4th 693 (7th Cir. 2022) .......................................................4, 10

*Rotan v. Unlimited Dev., Inc.*,
2023 WL 2173681 (Ill. App. Ct. Feb. 22, 2023) .............................6

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978) .........................................................................13

# TABLE OF AUTHORITIES
(continued)

**Page**

*Sesto v. Nat'l Fin. Sys., Inc.*,
   2005 WL 6519430 (N.D. Ill. Apr. 25, 2005) ...........................................................14

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
   553 F. Supp. 3d 452 (N.D. Ill. 2021) .......................................................................7

*Smith v. Spizzirri*,
   601 U.S. 472 (2024).................................................................................................15

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
   559 U.S. 662 (2010).................................................................................................14

*Tamburo v. Hyundai Motor Am. Corp.*,
   2024 WL 22230 (N.D. Ill. Jan. 2, 2024) ..................................................................4

*Tepper Realty Co. v. Mosaic Tile Co.*,
   259 F. Supp. 688 (S.D.N.Y. 1966) ...........................................................................5

*Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*,
   410 F.3d 964 (7th Cir. 2005) ..................................................................................15

*Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.*,
   2022 WL 1591719 (N.D. Ill. May 19, 2022) ..........................................................14

*United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*,
   363 U.S. 574 (1960)...................................................................................................8

*Walton v. Uprova Credit, LLC*,
   722 F. Supp. 3d 824 (S.D. Ind. 2024) ....................................................10, 11, 12

*Washington v. Persona Identities, Inc.*,
   2024 WL 3764906 (Ill. App. Ct. Aug. 13, 2024)......................................................9

*Wells Fargo Bus. Credit v. Hindman*,
   734 F.3d 657 (7th Cir. 2013) ..................................................................................10

*Williams v. Kemper Corp.*,
   608 F. Supp. 3d 708 (S.D. Ill. 2022)........................................................................5

## STATUTES

9 U.S.C. § 3.................................................................................................................15

# I.    INTRODUCTION

Plaintiffs Sonitha Scales, Alicia Thomas, Stephen McNutt, Jeff Porter, and Paul Simone (collectively, "Plaintiffs") each applied online for, and received, funding for loans originated by Defendant Minto Financial ("Minto"). In doing so, they signed loan agreements that contain valid, binding, and unambiguous arbitration provisions obligating them to arbitrate all disputes (with Minto and the CreditServe Defendants[1]) that arise out of or relate to their loan agreements strictly on an individual basis before an American Arbitration Association ("AAA") arbitrator, including any disputes over the validity and enforceability of their arbitration agreements.

Yet despite Plaintiffs' agreements to arbitrate all of their disputes with the CreditServe Defendants, they filed this putative class action asserting various federal and state law claims. But this Court is not the proper forum to decide either arbitrability disputes or the merits of Plaintiffs' claims. Instead, an arbitrator under the auspices of the AAA must resolve all of Plaintiffs' disputes asserted in the First Amended Complaint (Dkt. 30, "FAC "), including Plaintiffs' allegations challenging the validity and enforceability of their arbitration agreements. Accordingly, pursuant to the Federal Arbitration Act ("FAA"), the Court should compel each Plaintiff to arbitrate his or her respective claims against the CreditServe Defendants on an individual basis and stay this action pending the completion of those arbitrations.[2]

---

[1] As used, "CreditServe Defendants" should be understood as referring to Defendants CreditServe, Inc. ("CreditServe"), Jay McGraw ("McGraw"), and Eric Welch ("Welch"), unless otherwise specified.

[2] Because the parties agreed to delegate all threshold arbitration questions, the Court's role is limited to determining whether the parties agreed to arbitrate this dispute, and this Motion does not address the underlying pleadings. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649–50 (1986) ("[I]n deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims . . ."). However, FAC lacks merit for numerous reasons, which the CreditServe Defendants will present to the arbitrator; this Motion satisfies the CreditServe Defendants' immediate obligation to respond to the FAC. *See, e.g.*, *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 83 (2000)

## II.    <u>RELEVANT FACTS</u>

Plaintiffs each entered into separate, online consumer loan agreements ("Loan Agreements") with Defendant Minto. *See* FAC ¶¶ 157, 166, 172, 178, 183.[3] Each Plaintiff applied for their respective Minto loans online. Once approved for their loans, Plaintiffs were required to review the terms of their Loan Agreements and type their names into several boxes to indicate their acknowledgement and understanding of the Loan Agreements' provisions. By electronically signing their Loan Agreements, Plaintiffs agreed to a "Dispute Resolution Procedure and Arbitration Provision" ("Arbitration Provision") requiring binding arbitration for the resolution of all "disputes" with the CreditServe Defendants "arising from or relating to" the Loan Agreements, including any disputes concerning the validity or scope of the Arbitration Provision, or any attempt to set aside the Arbitration Provision. *See, e.g.*, Erhart Decl. ¶ 3 & Ex. 1, at 7. Although Plaintiffs' Loan Agreements differ in certain respects depending upon when they were executed, the Arbitration Provisions in the Loan Agreements have in common the following key terms and provisions, *inter alia*:

- Plaintiffs agreed to arbitrate all "disputes," which has the "broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision . . . , the validity and scope of this Provision and any claim or attempt to set aside this Provision[; and] (b)" all "U.S. federal or state law claims, disputes or controversies, arising from or relating directly or indirectly to this Agreement . . . ." among other claims. *Id.*, Ex. 1, at 7; Ex. 2, at 5-6; Ex. 3, at 5; Ex. 4, at 7; Ex. 5, at 5.[4]

- Arbitrations "shall occur before the [AAA]," and the arbitration proceeding "will be governed by the rules and procedures of the [AAA] applicable to consumer disputes." *Id.*, Ex. 1, at 7; Ex.

<hr />

("In lieu of an answer, petitioners filed a motion to compel arbitration, to stay the action, or, in the alternative, to dismiss."). In the event that the Court denies this Motion, all Defendants preserved their right to respond by filing a companion Joint Unopposed Motion for Leave to File Responsive Pleadings After The Court's Ruling on Defendants' Motions to Compel Arbitration.

[3] True and correct copies of each relevant Loan Agreement are attached hereto, and authenticated by the accompanying Declaration of Robert Erhart (hereafter, "Erhart Decl."), at Exs. 1-5.

[4] The McNutt, Porter, and Thomas Loan Agreements also defined "disputes" to encompass tribal law "claims, disputes, or controversies . . ." *Id.*, Ex. 2, at 5-6; Ex. 3, at 5; Ex. 4, at 7; Ex. 5, at 5.

2, at 5; Ex. 3, at 7; Ex. 4, at 5; Ex. 5, at 5.

- The arbitration will be conducted "in the county" of each Plaintiff's residence. *Id*, Ex. 1, at 7; Ex. 2, at 6; Ex. 3, at 7; Ex. 4, at 6; Ex. 5, at 6.

- Plaintiffs are not responsible for the payment of any arbitration fees, whether or not they prevail in the arbitration. *Id*., Ex. 1, at 7; Ex. 2, at 6; Ex. 3, at 7; Ex. 4, at 6; Ex. 5, at 6.

- The Arbitration Provision is "binding upon" Plaintiffs and their "successors and assigns, and related third parties." *Id.,* Ex. 1, at 7; Ex. 2, at 6; Ex. 3, at 7; Ex. 4, at 6; Ex. 5, at 6.

Plaintiffs also agreed, in clear and conspicuous typeface, to waive their rights to a jury trial and waive their rights to pursue or participate in a class action proceeding or act as a class representative, among other relevant terms. *Id*., Ex. 1, at 7-8; Ex. 2, at 6; Ex. 3, at 7-8; Ex. 4, at 6; Ex. 5, at 6. In addition, the more recent Arbitration Agreements executed by McNutt, Thomas, and Porter provided each a "Right to Opt Out" of the Arbitration Provision upon written notice within thirty days after execution. *Id*., ¶¶ 4-5, 7 & Ex. 2, at 7; Ex. 3, at 7; Ex. 5, at 7. None of the Plaintiffs afforded this "Opt Out" elected to opt out of the Arbitration Provision. *Id*.

Despite Plaintiffs' agreement to arbitrate all of their disputes arising from or relating to the Loan Agreements on an individual basis, including any disputes over arbitrability, they commenced this putative class action on November 11, 2024, and later amended the complaint on January 22, 2025 to add Plaintiffs Thomas and Porter and additional claims.

## III.   ARGUMENT

The Court should compel arbitration, as required by the Loan Agreements, which contain valid and enforceable mandatory individual Arbitration Provisions that are binding on Plaintiffs, enforceable by the CreditServe Defendants, and govern the dispute described in the FAC. Plaintiffs also expressly agreed to delegate threshold questions of arbitrability to an arbitrator, including by incorporating the AAA rules. Because the parties agreed to arbitrate and have questions of arbitrability decided by an arbitrator, the Court must stay this action pending resolution of the Plaintiffs' individual arbitrations.

**A.    Each Plaintiff Must be Compelled to Arbitrate Their Claims.**

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it] and plac[ing] arbitration agreements on equal footing with all other contracts.'" *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2005)). The FAA "requires courts to enforce the bargain of the parties to arbitrate" and "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *KPMG LLP v. Cocchi*, 565 U.S. 18, 21-22 (2011) (citations omitted). Accordingly, courts "must enforce an arbitration clause where (1) there is a valid agreement to arbitrate, (2) the claims fall within the scope of the agreement, and (3) the opposing party refused to arbitrate." *Rock Hemp Corp. v. Dunn*, 51 F.4th 693, 702 (7th Cir. 2022). As all three requirements are satisfied here, the Court should compel individual arbitrations.

**1.    The Parties Formed a Valid Agreement to Arbitrate.**

It is undisputed Plaintiffs entered into the Loan Agreements with Minto containing Arbitration Provisions and that they received loan proceeds flowing from those agreements. FAC ¶¶ 157, 166, 172, 178, 183. As part of the online lending process, Plaintiffs expressly waived their rights to a jury trial and agreed to forego pursuing or participating in a class action proceeding or serving as a class representative. Erhart Decl. Ex. 1, at 7-8; Ex. 2, at 6; Ex. 3, at 7-8; Ex. 4, at 6; Ex. 5, at 6. [5] These waivers are clear, express, and designed to fully inform a prospective borrower of their rights under the Loan Agreements. *See Domer v. Menard, Inc.*, 116 F.4th 686, 700 (7th Cir. 2024) (upholding customer's click as an "unambiguous[]" manifestation of assent to be bound by

---

[5] Under Illinois law, and in every other U.S. jurisdiction, the basic elements of a contract are an offer and an acceptance, consideration, and mutual assent to the essential terms. *See Tamburo v. Hyundai Motor Am. Corp.*, 2024 WL 22230, at *3 (N.D. Ill. Jan. 2, 2024).

terms); *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at \*4 (N.D. Ill. May 15, 2020)

(collecting cases); *see also Nicosia v. Amazon.com, Inc.*, 384 F. Supp. 3d 254, 278 (E.D.N.Y.

2019), *aff'd*, 815 F. App'x 612 (2d Cir. 2020) ("Any reasonably-active adult consumer will almost

certainly appreciate that by signing up for a particular service, he or she is accepting the terms and

conditions of the provider"). This agreement, in turn, is backed by a mutual promise to arbitrate.

*See Williams v. Kemper Corp.*, 608 F. Supp. 3d 708, 715 (S.D. Ill. 2022) (mutual promise to

arbitrate constitutes sufficient consideration). Additionally, the more recent Arbitration

Agreements executed by McNutt, Thomas, and Porter contained a "Right to Opt Out" provision

that ***none*** of the Plaintiffs invoked, further illustrating their assent thereto. Erhart Decl. ¶¶ 4-5, 7 &

Ex. 2, at 7; Ex. 3, at 7; Ex. 5, at 7.

Moreover, because the FAC relies on the formation and existence of the Loan Agreements

and their Arbitration Provisions (*see* ¶¶ 157, 166, 172, 178, 183), Plaintiffs are equitably estopped

from challenging the formation of those agreements. *See Hughes Masonry Co. v. Greater Clark

Cty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (plaintiff could not simultaneously "'rely

on the contract when it works to its advantage, and repudiate it when it works to [its]

disadvantage'") (quoting *Tepper Realty Co. v. Mosaic Tile Co.*, 259 F. Supp. 688, 692 (S.D.N.Y.

1966)); *Achey v. BMO Harris Bank, N.A.*, 64 F. Supp. 3d 1170, 1175 (N.D. Ill. 2014) (compelling

arbitration and noting, "it is difficult to imagine how [plaintiff] could proceed without the Loan

Documents, since they are the sole basis for her claim that the . . . Loans were usurious").

2. **The Arbitration Provision Delegates Arbitrability Issues to the Arbitrator.**

In the FAC, Plaintiffs appear to allege that the Loan Agreements and Arbitration Provisions

are somehow unenforceable under state law and, therefore, that the Court should disregard them.

*See* FAC ¶¶ 44, 56-58, 109. Not so. The parties have expressly delegated the question of

arbitrability to the arbitrator in each Loan Agreement, such that this Court may not entertain a

challenge on those grounds to the validity or enforceability of the Loan Agreements and the Arbitration Provision.

**First**, Plaintiffs' allegations constitute an impermissible collateral attack on the ***loan agreement*** as a whole rather than on the ***delegation*** provision. *See, e.g.*, FAC ¶¶ 43-44, 56-58, 68, 82, 109. Even if a contract may contain "many elements of alleged unconscionability applicable to the entire contract," the Supreme Court made clear that the FAA requires "the basis of challenge to be directed specifically to the agreement to arbitrate." *See Rent-a-Ctr. W., Inc. v. Jackson*, 561 U.S. 63, 71 (2010); *see also Rotan v. Unlimited Dev., Inc.*, 2023 WL 2173681, at *5-9 (Ill. App. Ct. Feb. 22, 2023).

**Second**, the parties have unmistakably delegated all questions of arbitrability, validity and enforceability of the Arbitration Provision to the arbitrator. *See, e.g.*, Erhart Decl. ¶ 3, Ex. 1 at 7 (defining "dispute" as including "the validity and scope of th[e] [Arbitration] Provision and any claim or attempt to set aside th[e] [Arbitration] Provision" and delegating disputes to the American Arbitration Association in proceedings "governed by the rules and procedures of the American Arbitration Association"). It is well established that parties may agree to arbitrate threshold issues, including "whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Rent-a-Ctr.*, 561 U.S. at 69; *see also K.F.C. v. Snap, Inc.*, 29 F.4th 835, 837 (7th Cir. 2022) ("an arbitration clause may delegate all other issues, including defenses, to the arbitrator" to decide). When parties have expressed with "clear and unmistakable evidence" their intent to delegate such a "gateway issue," a court may not decide it. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (internal quotations omitted). This is precisely what the parties agreed, here, in at least two ways.

First, the Loan Agreements expressly define arbitrable "Disputes" as "all claims, disputes,

or controversies arising from or relating directly to this [Arbitration Provision], the validity and scope of this Provision and any claim or attempt to set aside this Provision[.]" Erhart Decl. Ex. 1, at 7; Ex. 2, at 5-6; Ex. 3, at 5; Ex. 4, at 7; Ex. 5, at 5. Nearly identical terms have been found to demonstrate a clear and unmistakable intent to delegate all gateway questions to an arbitrator. *See Kemph v. Reddam*, 2015 WL 1510797, at *4 (N.D. Ill. Mar. 27, 2015) (enforcing delegation language that arbitrable disputes included "any issue concerning the validity, enforceability, or scope of th[is] loan or Arbitration agreement"); *see also McClenon v. Postmates, Inc.*, 473 F. Supp. 3d 803, 810 (N.D. Ill. 2020) (similar); *Lee v. Uber Techs., Inc.*, 208 F. Supp. 3d 886, 891 (N.D. Ill. 2016) (similar). Second, the Arbitration Provision provides that any disputes "will be governed by the rules and procedures of the [AAA] applicable to consumer disputes . . . ." Erhart Decl. Ex. 1, at 7; Ex. 2, at 5; Ex. 3, at 7; Ex. 4, at 5; Ex. 5, at 5. AAA's rules include an independent delegation of arbitrability to the arbitrator. *See* AAA Consumer Arbitration Rules, Rule 14(a), *available at* https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last visited Feb. 5, 2025) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . . ."). Courts have held that "incorporating the AAA's rules . . . into a contract clearly and unmistakably delegates arbitrability to the arbitrator." *See, e.g.*, *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458 (N.D. Ill. 2021).

Thus, the Arbitration Provision's unambiguous language and incorporation of the AAA Rules demonstrate an unmistakable intent to delegate questions of arbitrability to the arbitrator.

**3.      Plaintiffs' Claims Fall Squarely Within the Arbitration Provision's Scope.**

Even assuming the Court were to determine arbitrability (and it should not for the reasons set forth, above), Plaintiffs' claims are nonetheless subject to the Arbitration Provisions.

Where the parties have entered into an arbitration agreement, courts presume that any

dispute between them falls within its scope. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Thus, an "order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650. "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985); *see also Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Where an arbitration clause is broad, as here, there is a heightened presumption of arbitrability such that, "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs.*, 475 U.S. at 650 (quoting *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 584-85 (1960)).

Here, the Arbitration Provisions in Plaintiffs' Loan Agreements broadly encompass all of the claims in the FAC, as well as Plaintiffs' allegations challenging the validity and scope of the Arbitration Provisions, themselves. Plaintiffs agreed to resolve "all claims, disputes, or controversies arising from or relating directly or indirectly to this Dispute Resolution Procedure and Arbitration Provision," including any challenges to the Arbitration Provisions' "validity and scope" and "any claim or attempt to set [them] aside," as well as all "U.S. federal or state law claims, disputes, or controversies, arising from or relating directly or indirectly to this [Loan] Agreement" and any other potential disputes[6] through individualized arbitration. Erhart Decl. Ex. 1, at 7; Ex. 2, at 5-6; Ex. 3, at 5; Ex. 4, at 7; Ex. 5, at 5. This language is unequivocal and broadly encompasses all of Plaintiffs' claims relating to their loans, which are premised on baseless

---

[6] All of the Loan Agreements give "dispute" "the broadest possible meaning," and the term covers far more than just challenges to the Arbitration Provision and the claims asserted in the FAC. Erhart Decl. Ex. 1, at 7; Ex. 2, at 5-6; Ex. 3, at 5; Ex. 4, at 7; Ex. 5, at 5.

accusations that the Defendants collectively operated an unlawful lending operation. FAC ¶¶ 112-213. Plaintiffs' claims not only arise directly out of the Loan Agreements, but only exist because of the Loan Agreements. *Id.* ¶ 190 (referencing the "loans at issue in this case"). But for the Loan Agreements with Minto, their claims would not have arisen. Consequently, Plaintiffs' claims indisputably fall within the Arbitration Provision's broad scope. *See Moses H. Cone Mem'l Hosp*, 460 U.S. at 24; *see also C & L Enters. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 415 (2001) (arbitration agreement's broad "arising out of or relating to" language encompassed dispute).

### 4. All Defendants Are Entitled to Enforce the Arbitration Clause.

The Arbitration Provisions apply to Minto and any "related third parties," which includes Minto's "employees, *agents*, directors, officers, governors, managers, members, parent company or affiliated entities . . . ." Erhart Decl. Ex. 1, at 7; Ex. 2, at 6; Ex. 3, at 7; Ex. 4, at 5-6; Ex. 5, at 5-6 (emphasis added). Plaintiffs allege CreditServe is an agent of Minto that is "responsible for collecting" "hundreds of millions of dollars of payments" on loans made by Minto; "operates a call center" that facilitates consumers' acquisition of Minto's loans; and employs individuals who assist with servicing and collecting Minto's loans. *Id.* ¶¶ 136, 141, 154-55. These alleged servicing activities on behalf of Minto establish an agency relationship with Minto, as the term "agent" is commonly understood. *See HSBC Bank USA, Nat'l Ass'n v. Williams*, 2015 WL 1509779, at *1 (N.D. Ill. Mar. 30, 2015) (acknowledging loan service provider as "agent" of lender).[7] The

---

[7] Even assuming *arguendo* that the Court were to find that CreditServe, McGraw, and Welch were somehow not agents of Minto, at a minimum they are intended "related third-part[y]" beneficiaries within the classes described in the Arbitration Provisions of the Loan Agreements (Erhart Decl., Ex. 1, at 7; Ex. 2, at 6-7; Ex. 3, at 5-6; Ex. 4, at 7-8; Ex. 5, at 5-6) and therefore are entitled to enforce them. *See, e.g.*, *Washington v. Persona Identities, Inc.*, 2024 WL 3764906, at *6 (Ill. App. Ct. Aug. 13, 2024) ("Other than parties to an arbitration agreement, only third-party beneficiaries may compel arbitration or be compelled to arbitrate.").

Arbitration Provision therefore applies to CreditServe and to its principals, including McGraw and Welch, who Plaintiffs allege (FAC ¶¶ 20, 22) serve as CreditServe's corporate officers. *See Wells Fargo Bus. Credit v. Hindman*, 734 F.3d 657, 667 (7th Cir. 2013).[8]

In sum, (1) a valid arbitration agreement exists between the parties, (2) Plaintiffs' claims fall squarely within its broad scope, and (3) Plaintiffs have failed to arbitrate by commencing this action. Accordingly, the CreditServe Defendants have readily satisfied the three-part test in *Rock Hemp*; the Court therefore must compel Plaintiffs to individually arbitrate their disputes.

**B.      The Prospective Waiver Doctrine Is Not a Bar to Compelling Arbitration Here.**

In citing to prior decisions of this Court, see FAC ¶109, Plaintiffs claim that the Plaintiffs' Arbitration Provisions are unenforceable under the so-called prospective waiver doctrine.[9] These opinions, however, are non-binding, inapposite, and carry no precedential or persuasive value. Regardless, the prospective waiver doctrine is inapplicable here for the following reasons.

**1.      The Loan Agreements Preserve Plaintiffs' Federal Statutory Rights.**

The prospective waiver doctrine, as articulated by the U.S. Supreme Court, is nothing more than a rule to "harmonize competing federal policies," such that enforcement of the FAA does not thwart the enforcement of other federal law and policy by forcing a party to waive *federal* statutory causes of action in the arbitral forum. *See Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 235 (2013) (describing prospective waiver as a "judge-made exception to the FAA which . . . allow[s]

_____

[8] Plaintiffs are also equitably estopped from opposing arbitration where, as here, there is an obvious, close nexus between the parties and their claims which are closely intertwined with the Loan Agreements. *See Achey*, 64 F. Supp. 3d at 1178 (permitting non-signatory servicer to invoke arbitration clause where plaintiff relied on "common allegation[s]" about the loan agreement); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, 713 F. Supp. 2d 734, 745 (N.D. Ill. 2010) (non-signatory "can compel arbitration when a signatory's claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration").

[9] The prospective waiver rule is also referred to as the "effective vindication" exception. *Walton v. Uprova Credit, LLC*, 722 F. Supp. 3d 824, 833 n.4 (S.D. Ind. 2024).

courts to invalidate agreements that prevent the 'effective vindication' of a <u>federal</u> statutory right.") (emphasis added). So long as arbitration agreements preserve the ability to pursue and vindicate federal statutory remedies so that "th[ose] statute[s] will continue to serve both [their] remedial and deterrent function," there is no issue. *Mitsubishi Motors*, 473 U.S. 614, 637 (1985).

Here, the Loan Agreements' "Governing Law" provisions unambiguously protect Plaintiffs' ability to vindicate their <u>federal</u> claims and remedies in arbitration because they explicitly state that, in addition to tribal law, <u>federal law</u> shall govern any disputes and the arbitration itself:

> The laws of the Tribe **and applicable federal law** will govern this Agreement, without regard to the laws of any state or other jurisdiction, including the conflict of laws rules of any state… in the event of a bona fide dispute between you and us, Tribal law and **applicable federal law** shall exclusively apply to such dispute.

Erhart Decl. Ex. 4, at 4 (emphasis added); *see also* Ex. 1, at 4; Ex. 2, at 5; Ex. 3, at 4; Ex. 5, at 4 (emphasis added). Because each Loan Agreement incorporates federal law, Plaintiffs are not precluded from pursuing their federal RICO claims in arbitration. *See, e.g.*, *Walton v. Uprova Credit, LLC*, 722 F. Supp. 3d 824, 835 (S.D. Ind. 2024) (compelling arbitration of RICO claim where agreement's "Governing Law provision . . . expressly preserves federal statutory rights").

Plaintiffs also cite cases purporting to stand for the proposition that the prospective waiver doctrine should invalidate the delegation clause because, as applied to the Governing Law clause, state law rights and remedies are waived. *See* FAC ¶¶ 44, 109. Not so. The prospective waiver doctrine safeguards only federal rights and does not extend to state law. *See, e.g.*, *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir. 2013) ("The 'effective vindication' exception . . . does not extend to state statutes."); *Walton*, 722 F. Supp. 3d at 836-37; *Doctor's Assocs., LLC v. Tripathi*, 794 F. App'x 91, 94 (2d Cir. 2019) (prospective waiver did not apply where plaintiff only asserted state law claims). The Eleventh Circuit decision in *Dunn v. Global Trust Management*

also is instructive, here. 2024 WL 4379966 (11th Cir. Oct. 3, 2024) (*per curiam*). In *Dunn*, the Eleventh Circuit considered similar language identifying both tribal law and "applicable federal law," as well as the FAA specifically, as the governing law for arbitration. *Id.* at *9-*11. The court concluded that, because the arbitration agreements required that arbitrations "must proceed in accordance with both Tribal law and the FAA," the application of tribal law and the FAA did not conflict, and the plaintiffs could still challenge the enforceability of the arbitration agreement. *Id.* at *14. Here too, the Arbitration Provision explicitly requires the application of both Tribal law and federal law, ensuring Plaintiffs' recourse under federal law.

*Walton* is an even more apt comparison to this case. In *Walton*, a borrower advanced a prospective waiver argument to escape arbitration where the "Governing Law" provision of his loan agreement expressly incorporated "the laws of the Tribe and applicable U.S. federal law." *Walton*, 722 F. Supp. 3d at 834. That provision further stated that the loan agreement would not be interpreted to "(i) waive any rights you have under U.S. federal law or (ii) prevent you from bringing any individual [c]laim against us under U.S. federal law." *Id*. at 834-35. The *Walton* court found no prospective waiver because the provision "[did] not—either explicitly or implicitly— prospectively waive Mr. Walton's federal rights . . . , repeats the applicability of federal law, and, as such, reaffirms that the Agreements are subject to the laws of the United States." *Id*. at 835. The Minto Loan Agreements' Governing Law provisions are similar to the ones in *Walton*, because they state expressly that "applicable federal law will govern this Agreement" and reiterates in the next sentence that "federal law" also applies to disputes. Erhart Decl. Ex. 1, at 4; Ex. 2, at 5; Ex. 3, at 4; Ex. 4, at 4; Ex. 5, at 4. The Minto Governing Law provision thus "repeats the applicability of federal law" and "reaffirms that the [Loan Agreements] are subject to the laws of the United States." *Walton*, 722 F. Supp. 3d at 835. Thus, the Minto Loan Agreements' "plain language

reveals neither waiver nor disavowal of federal law and, accordingly, cannot fairly be construed as prospectively waiving a potential claimant's statutory rights and remedies." *Id*. Because the Loan Agreements neither disclaim nor hinder any statutory rights under federal law, the prospective waiver doctrine does not bar arbitration of Plaintiffs' claims.

### 2. The Court Could Still Enforce the Arbitration Provisions Even If They Required Applying Tribal Law over Federal Law.

As set forth above, it is sufficient that the Arbitration Provisions preserve Plaintiffs' recourse under federal law. But even assuming *arguendo* that they did not, they would still be valid and enforceable under the same principles that apply to arbitration agreements specifying the use of foreign law. The U.S. Supreme Court consistently has held that arbitration agreements are enforceable if they contain choice-of-law provisions selecting the laws of a foreign jurisdiction and expressly excluding the application of specific federal or state laws—even where applying foreign law would produce radically different outcomes than U.S. federal law. *See, e.g.*, *Mitsubishi Motors*, 473 U.S. at 629-30 (enforcing arbitration provision requiring Swiss law in arbitration, rather than of federal antitrust law). The same reasoning should apply to Indian Tribes, which are themselves "separate sovereigns pre-existing the Constitution." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 56 (1978). Accordingly, the Court should compel arbitration here, just as it would if the Arbitration Provision specified the application of a foreign country's law.[10]

---

[10] Even if the Court were to determine that the prospective waiver doctrine should apply in this case (and it should not), the Court could simply sever the Governing Law provisions and compel arbitration. *See Rent-A-Ctr.*, 561 U.S. at 70-71 (holding that the "remainder of the contract" for severability purposes can be the "rest of the agreement to arbitrate claims"). Section 2 of the FAA permits courts to sever a valid agreement to arbitrate from the remainder of a contract, even if the remainder of the contract includes language making the contract as a whole invalid. *Id.* (quoting *Buckeye Check Cashing*, 546 U.S. at 447).

**C.**    <u>**Plaintiffs Must Be Compelled to Arbitrate Individually, Not as a Class.**</u>

As a threshold matter, the availability of class arbitration is a question to be decided by the court rather than the arbitrator. *See, e.g.*, *Agha v. SoFi Lending Corp.*, 2024 WL 1158406, at *4 (N.D. Ill. Mar. 18, 2024) (citing *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 507 (7th Cir. 2018)). Here, the Court should compel Plaintiffs to arbitrate on an individual, not a class basis, because that is expressly what Plaintiffs agreed in their Arbitration Provisions. *See, e.g.,* Erhart Decl. Ex. 1, at 7-8; Ex. 2, at 6; Ex. 3, at 7-8; Ex. 4, at 6; Ex. 5, at 6.

As the Supreme Court held in *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, "where the parties stipulated that there was 'no agreement' on [class arbitration], it follows that the parties cannot be compelled to submit their dispute to class arbitration." 559 U.S. 662, 687 (2010); *see also Agha*, 2024 WL 1158406, at *4 ("Courts are 'obliged to enforce the *type of arbitration* to which the[ ] parties agreed.'") (quoting *Livingston v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003)). Moreover, courts are to assume the parties agreed to arbitrate only an individual basis, unless the applicable arbitration agreement clearly and expressly provides for class-wide arbitration, and any silence or ambiguity in the agreement on this issue should not be construed against the contract's drafter. *See, e.g.*, *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 185 (2019) ("Like silence, ambiguity does not provide a sufficient basis to conclude that parties to an arbitration agreement agreed to 'sacrifice[ ] the principal advantage of arbitration.'"); *Tonkawa Tribe of Indians of Oklahoma v. Sci. Games Corp.*, 2022 WL 1591719, at *8-9 (N.D. Ill. May 19, 2022) (same). Thus, where, as here, "'an agreement is unambiguous [regarding class arbitration], the court must enforce the terms of the agreement.'" *Agha*, 2024 WL 1158406, at *4 (quoting *Sesto v. Nat'l Fin. Sys., Inc.*, 2005 WL 6519430, at *3 (N.D. Ill. Apr. 25, 2005)).

**D.** **The Court Should Stay this Action Pending Completion of Plaintiffs' Arbitrations, or, Alternatively, Pending Appellate Guidance from the Seventh Circuit.**

Under Section 3 of the FAA, once a dispute has been submitted to binding arbitration, a district court must stay proceedings until the arbitration has been completed. *See* 9 U.S.C. § 3; *see also Smith v. Spizzirri*, 601 U.S. 472, 478 (2024) ("When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding."). The Court should therefore stay this action pending the completion of Plaintiffs' individual arbitrations.

Alternatively, the CreditServe Defendants request that the Court stay this case pending a final resolution in the appeal of *Harris v. W6LS, Inc.*, 2024 WL 2319716 (N.D. Ill. May 22, 2024). The *W6LS* case is currently on appeal before the Seventh Circuit, *appeal docketed*, No. 24-2056 (7th Cir. June 20, 2024), and similarly concerns the attempted, albeit incorrect application of the prospective waiver doctrine to invalidate arbitration clauses in the tribal lending context, which could be impactful, here. The Court would be acting well within its inherent authority to stay this action for that purpose. *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."); *see, e.g.*, *Tex. Indep. Producers & Royalty Owners Ass'n v. EPA*, 410 F.3d 964, 980 (7th Cir. 2005) (staying consideration of petition pending sister circuit's resolution of controlling legal question).

## IV. CONCLUSION

For the foregoing reasons, the Court should enter an order: (1) compelling individual arbitration of each Plaintiff's claims under the express terms of each Arbitration Provision; and (2) staying this action pending completion of the arbitrations or, at minimum, further guidance from the Seventh Circuit.

Dated: March 21, 2025

Respectfully submitted,

By: /s/ A. Paul Heeringa

A. Paul Heeringa (IL ARDC #6288233)
MANATT, PHELPS & PHILLIPS, LLP
151 N. Franklin St., Suite 2600
Chicago, Illinois 60606
Telephone: (312) 529-6308
Email: pheeringa@manatt.com

*Counsel for Defendants CreditServe, Inc.,
Jay McGraw, and Eric Welch*

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 21, 2025, the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's electronic docket.

/s/ *A. Paul Heeringa*
A. Paul Heeringa